IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| KIMBERLY I. SMITH-GILL, | No. 60535-0-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | |
| Respondent. | |

CHE, J. — Kimberly Smith-Gill appeals an order granting summary judgment in favor of the Department of Labor and Industries (DLI).

Smith-Gill, a recipient of Social Security Disability Insurance benefits (SSDI), suffered an industrial injury resulting in receipt of workers' compensation benefits, including temporary total disability benefits. DLI offset her temporary total disability benefits based on RCW 51.32.220 and 42 U.S.C. § 424a. Smith-Gill moved for summary judgment, and DLI cross-motioned for summary judgment. The superior court ruled in favor of DLI.

On appeal, Smith-Gill argues that under a different statute, RCW 51.32.225, she is exempt from any offset and that Washington's offset provision is preempted by federal law. Smith-Gill requests attorney fees and costs on appeal.

We hold that the superior court did not err in determining that RCW 51.32.220 applied to Smith-Gill and not RCW 51.32.225. Further we hold that Smith-Gill fails to show that federal law preempts application of the offset. Accordingly, we affirm and decline to award Smith-Gill attorney fees and costs on appeal.

FACTS

Kimberly Smith-Gill contracted bacterial meningitis as a young child. It caused brain damage that resulted in difficulties with reading, writing, and comprehending paperwork. Decades later, in 1994, Smith-Gill began receiving SSDI benefits related to her condition.

On November 1, 2018, Smith-Gill, who was in her early 50s, sustained an industrial injury while working part-time for a retail clothing store. She applied for and received workers' compensation benefits from DLI, including temporary total disability benefits, which is commonly called time-loss compensation benefits. At the time of her industrial injury, Smith-Gill was under the age of 65, received SSDI benefits, and received no other social security benefits.

On October 23, 2020, because Smith-Gill received both SSDI and time-loss compensation benefits, DLI ordered an offset, which reduced Smith-Gill's time-loss compensation benefits. On May 5, 2022, DLI affirmed its October 23, 2020 order.

Smith-Gill appealed DLI's May 5, 2022 order to the Board of Industrial Insurance Appeals (Board). After a hearing, the industrial appeals judge dismissed Smith-Gill's appeal for failing to present a prima facie case. Smith-Gill petitioned for review, and the Board adopted the industrial appeals judge's decision.

Smith-Gill appealed the Board's decision to the superior court. She filed a motion for summary judgment acknowledging there were no questions of material fact and arguing it was unlawful for DLI to offset her workers' compensation benefits based on federal preemption and RCW 51.32.225. In response, DLI cross-moved for summary judgment, arguing that it was required to offset Smith-Gill's benefits under RCW 51.32.220(1). The superior court denied Smith-Gill's motion for summary judgment and granted DLI's motion for summary judgment.

Smith-Gill appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

The Industrial Insurance Act, Title 51 RCW (IIA), governs judicial review of workers' compensation decisions. *Smith v. Dep't of Lab. & Indus.*, 22 Wn. App. 2d 500, 506, 512 P.3d 566 (2022). Under the IIA, we review the superior court's decision rather than the Board's order. RCW 51.52.140.

We review summary judgment orders de novo. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). "Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Associated Press v. Wash. State Legis.*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019); CR 56(c). Summary judgment may be determined as a matter of law if the material facts are not in dispute. *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 325, 519 P.3d 953 (2022).

## II. STATUTORY INTERPRETATION

Smith-Gill argues the trial court erred by concluding that RCW 51.32.225 did not apply to her based on her receipt of social security benefits prior to her industrial injury. Smith-Gill specifically contends that the last phrase of the last sentence of RCW 51.32.225 references only social security benefits, not social security retirement benefits, and she was receiving social security benefits prior to her industrial injury. We disagree that RCW 51.32.225 applies to Smith-Gill.

A. *Legal Principles*

Statutory interpretation is a question of law courts review de novo. *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 586, 567 P.3d 38 (2025).

The objective in statutory interpretation is "to ascertain and carry out the Legislature's intent," giving effect to plain meaning. *Id*. Therefore, we first look to the plain language of the statute to determine legislative intent. *Langhorst v. Dep't of Lab. & Indus.*, 25 Wn. App. 2d 1, 8, 522 P.3d 60 (2022).

"Plain meaning is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Brown,* 4 Wn.3d at 586 (internal quotation marks omitted). We do not add words the legislature has not included, and we give effect to all language used without rendering any portion of the statute meaningless or superfluous. *Id.* at 587. We presume there is an indication of legislative intent when language is included in one statute and excluded in another. *Glacier Nw., Inc. v. Dep't of Lab. & Indus.*, 32 Wn. App. 2d 189, 201, 555 P.3d 896 (2024)

(explaining the canon of construction "expressio unius est exclusio alterius"). If the language is plain on its face, our inquiry ends there and we give effect to that plain meaning. *Brown*, 4 Wn.3d at 586.

When the plain meaning of a statute has more than one reasonable interpretation, the statute is ambiguous and we undertake statutory construction to discern legislative intent by examining legislative history and the circumstances surrounding its enactment. *Id.* at 587. But "a statute is not ambiguous merely because different interpretations are conceivable." *J.M.I. v. State*, 6 Wn.3d. 416, ___, 588 P.3d 342 (2026).

When a statute within the IIA is ambiguous, we apply a mandate of liberal construction "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." *Dep't of Lab. & Indus. v. Lyons Enters. Inc.*, 185 Wn.2d 721, 734, 374 P.3d 1097 (2016) (quoting RCW 51.12.010)). However, "[w]hile policy considerations may provide a valuable rule of statutory construction in interpreting an ambiguous statute, where the meaning is clear its meaning must be given effect without resort to such a rule." *Allan v. Dep't of Lab. & Indus.*, 66 Wn. App. 415, 418, 832 P.2d 489 (1992). Courts "should resist the temptation to rewrite an unambiguous statute to suit our notions of what is good public policy, recognizing the principle that 'the drafting of a statute is a legislative, not a judicial, function.'" *Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001) (quoting *State v. Jackson*, 137 Wn.2d 712, 725, 976 P.2d 1229 (1999)).

RCW 51.32.220, titled "Reduction in total disability compensation—Limitations—Notice—Waiver—Adjustment for retroactive reduction in federal social security disability benefit—Restrictions," states in relevant part:

> (1) For persons receiving compensation for temporary or permanent total disability pursuant to the provisions of this chapter, such compensation shall be reduced by an amount equal to the benefits payable under the *federal old-age, survivors, and disability insurance act* as now or hereafter amended not to exceed the amount of the reduction established pursuant to 42 U.S.C. Sec. 424a.[1] However, such reduction shall not apply when the combined compensation provided pursuant to this chapter and the federal old-age, survivors, and disability insurance act is less than the total benefits to which the federal reduction would apply, pursuant to 42 U.S.C. 424a.
> . . . .
> (7) Subsection (1) of this section applies to:
> . . . .
> (b) Workers *under the age of sixty-five* whose effective entitlement to total disability compensation begins after January 1, 1983.

RCW 51.32.220(1), (7)(b) (emphasis added).

RCW 51.32.225, titled "Reduction in total disability compensation—Offset for social security retirement benefits," states as follows:

> (1) For persons receiving compensation for temporary or permanent total disability under this title, the compensation shall be reduced by [DLI] to allow an offset for *social security retirement benefits* payable under the federal social security, old age survivors, and disability insurance act, 42 U.S.C. This reduction shall not apply to any worker who is receiving permanent total disability benefits prior to July 1, 1986. *This reduction* does not apply to workers who had applied to

---

[1] 42 U.S.C. § 424a governs the Social Security Administration's ability to offset SSDI benefits relative to the amount a worker receives from total or partial disability benefits, including permanent, under a workers' compensation law or plan. 42 U.S.C. § 424a(d) of the provision permits states to implement reverse offset statutes where certain state workers' compensation benefits are reduced, rather than SSDI benefits.

RCW 51.32.220 also provides when the reduction to temporary or permanent total disability benefits do not apply. Smith-Gill does not argue any exception applies to her.

receive *social security retirement benefits* prior to the date of their injury or to workers who were receiving *social security benefits* prior to their injury.

RCW 51.32.225(1) (emphasis added).

B.       *RCW 51.32.220 Applies and 51.32.225 Does Not Apply*

Smith-Gill contends RCW 51.32.225(1) uses different terms within the last sentence, so the legislature meant different things. She argues the last sentence applies to her because she was receiving social security benefits prior to her workers' compensation injury, which precludes any offset of her workers' compensation temporary total disability benefits. We disagree.

We begin our analysis with whether RCW 51.32.220 or 51.32.225 applies. RCW 51.32.220 requires DLI to reduce temporary or permanent total disability compensation received under RCW 51.32, by an amount equal to the benefits payable under the federal disability act. *Ravsten v. Dep't. of Lab. & Indus.*, 108 Wn.2d 143, 148-49, 736 P.2d 265 (1987). *See* 42 U.S.C. § 424a; *Frazier v. Dep't. of Lab. & Indus.*, 101 Wn. App. 411, 416-17, 3 P.3d 221 (2000) (discussing the history of Washington's enactment of RCW 51.32.220 to take advantage of 42 U.S.C. § 424a and § 424a(d) whereby the State may reduce the amount of certain workers' compensation total disability benefits if the worker is also receiving SSDI benefits).

RCW 51.32.220's purpose is to ensure full compensation while preventing "overlapping awards" with federal disability benefits. *Id.* at 416. "State disability benefits and federal old age social security benefits serve the same purpose: to restore earnings due to wage-loss. The cause of wage loss—whether it be old age, disability, or unemployment—is irrelevant." *Harris v. Dep't of Lab. & Indus.*, 120 Wn.2d 461, 480, 843 P.2d 1056 (1993).

Here, Smith-Gill's SSDI and time-loss compensation provide the same benefit, wage loss replacement and, therefore, constitute duplicate benefits. Thus, RCW 51.32.220, which applies to SSDI benefits, requires an offset to Smith-Gill's time-loss compensation benefits if she meets the requirements of RCW 51.32.220(7).[2] Smith-Gill was receiving SSDI and was under the age of 65 when her effective entitlement to temporary total disability compensation began after January 1, 1983. Thus, RCW 51.32.220 applies to Smith-Gill.

However, Smith-Gill contends that RCW 51.32.225(1) applies because the last sentence indicates a reduction does not apply to "workers who were receiving social security benefits prior to their injury." Br. of Appellant at 12. But Smith-Gill ignores that RCW 51.32.225's last sentence begins "This reduction," which anchors the sentence's scope to what is stated prior to the last sentence. Prior to the last sentence, the statute discusses reductions in workers' compensation total disability benefits for persons receiving social security *retirement* benefits.

RCW 51.32.225 first sentence allows the State to reduce temporary or permanent total disability compensation of injured workers under RCW 51.32 "who receive federal social security *retirement* benefits." *Frazier*, 101 Wn. App. at 417. Looking to the plain language of the statute, the title of RCW 51.32.225 states "Offset for social security *retirement* benefits." RCW 51.32.225 (emphasis added). "This reduction" in RCW 51.32.225(1) applies neither to workers who are receiving permanent total disability benefits prior to July 1, 1986, nor to

---

[2] At oral argument, appellant raised for the first time that the exception to the reduction in RCW 51.32.220(1) applies. Wash. Ct. of Appeals, oral arg., June 26, 2026, at 24 min. 02 sec. through 24 min. 26:55 sec. We need not consider issues raised for the first time at oral argument. RAP 12.1(a). We decline to address it here.

workers who had applied to receive social security retirement benefits prior to the date of their workers' compensation injury or to workers receiving social security benefits prior to their workers' compensation injury. RCW 51.32.225(1).

Smith-Gill's argument improperly severs the last clause from the preceding language. *See Housing Authority v. Knight*, 4 Wn.3d 324, 332, 563 P.3d 1058 (2025). Statutory interpretation requires that a term or phrase take its meaning from associated words or phrases in the surrounding statutory language. *U.S. Sportsmen's All. Found. v. Smith*, 3 Wn.3d 743, 749, 557 P.3d 254 (2024) (describing the principle of "noscitur a sociis"). Under *noscitur a sociis*, the remaining phrase cannot be read in isolation from the rest of the sentence, and, in effect, render any language meaningless or superfluous. *See id.*; *Brown*, 4 Wn.3d at 587. Smith-Gill's reading of RCW 51.32.225 would render the word "retirement," as used throughout .225 superfluous. Smith-Gill's reading would also render RCW 51.32.220 meaningless or superfluous. Thus, RCW 51.32.225 does not apply to Smith-Gill.

C.       *RCW 51.32.225 is Unambiguous*

Smith-Gill asserts that RCW 51.32.225 is ambiguous due to the different interpretations reached by the superior court and Smith-Gill. Because of the alleged ambiguity, Smith-Gill argues that the requirement for liberal construction in the IIA applies. We disagree.

A statute is not ambiguous simply because two different interpretations are conceivable. *J.M.I.*, 588 P.3d at 346. Washington courts have consistently construed the plain language of both 51.32.220 and 51.32.225 as unambiguous. *See e.g., Harris*, 120 Wn.2d at 472, 474 (finding RCW 51.32.225 statutory exception language unambiguous); *Frazier*, 101 Wn. App. at 419-20

(construing the meaning of RCW 51.32.225(1) as clear); *Potter v. Dep't of Lab. & Indus.*, 101 Wn. App. 399, 405-07, 3 P.3d 229 (2000) (construing the plain language of "receiving compensation" as used in RCW 51.32.220(1) as unambiguous).

Here, RCW 51.32.225 is plain on its face. Given the plain language of both statutes, Smith-Gill's interpretation is not a reasonable reflection of the legislature's intent. Although the IIA contains a mandate for liberal construction, courts do not apply the statutory construction rules where statutory language is unambiguous because doing so would constitute legislation rather than statutory interpretation. *See Allan*, 66 Wn. App. 418; *Sedlacek*, 145 Wn.2d at 390.

The plain language of RCW 51.32.225 governs offsets to social security retirement benefits, not SSDI, and our inquiry ends. *Brown*, 4 Wn.3d at 586. Any offset to Smith-Gill's temporary total disability benefits due to her receipt of SSDI benefits are controlled by RCW 51.32.220. Accordingly, we hold that the superior court did not err in determining that RCW 51.32.220 applied to Smith-Gill and not RCW 51.32.225, or in granting DLI's motion for summary judgment.

### III. FEDERAL PREEMPTION

Smith-Gill argues 42 U.S.C. § 423(a) preempts RCW 51.32.220. We disagree.

A.  *Legal Principles*

Under 42 U.S.C. § 423(a) – Disability insurance benefit payments, the Social Security Administration (SSA) permits SSDI recipients to receive SSDI benefits and work so long as their wages remain below the substantial gainful activity (SGA) threshold.

However, another provision, 42 U.S.C. § 424a – Reduction of disability benefits, grants the SSA the ability to offset SSDI benefits if the individual is entitled to receive total or partial disability, including permanent, under a workers' compensation law or plan. 42 U.S.C. § 424a(a)(2). Congress enacted 42 U.S.C. § 424a, for two purposes: (1) to avoid discouraging workers from returning to work, and (2) to limit the overlapping benefits that would drain federal and state funds by coordinating a reduction in federal benefits when a worker is also receiving industrial insurance benefits. *Harris*, 120 Wn.2d at 466-67.

42 U.S.C. § 424a(d) Exception, provides:

> The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under this subchapter on the basis of the wages and self-employment income of an individual entitled to benefits under section 423 of this title, and such law or plan so provided on February 18, 1981.

Through § 424a(d), Congress created an exception to the social security disability offset, permitting states to implement a "reverse offset" that allows the state to reduce its payment of disability compensation under state workers' compensation laws rather than the federal government reducing social security disability benefits. *Frazier*, 101 Wn. App. at 416. The provision shifts costs from the state to the federal government. *Id.*; 42 U.S.C. § 424a(d).

Our state legislature enacted RCW 51.32.220 and RCW 51.32.225 in 1975 and 1986, respectively, to adopt the reverse offset options in Washington. *Frazier,* 101 Wn. App. at 415-17. The legislature enacted RCW 51.32.220 with the purpose of fully compensating disabled workers for their disability, though not permitting collection of "overlapping awards." *Ravsten,* 108 Wn.2d at 149. Similarly, the legislature enacted RCW 51.32.225 with the purpose of

"extend[ing] Washington's reverse offset to cover those 65 and older who receive federal retirement benefits." *Harris,* 120 Wn.2d at 467.

Article VI, clause 2 of the United States Constitution, known as the supremacy clause, provides that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Federal preemption occurs when (1) Congress indicates an intent to occupy a given field, (2) state law conflicts with federal law, or (3) state law hinders accomplishment of the purposes and objectives of federal law. *Harris*, 120 Wn.2d at 470-71.

Courts "'adhere to a rigorous analysis of the preemption issue because of [their] continuing desire to uphold state sovereignty to the maximum extent, tempered only by the mandate of the supremacy clause of the United States Constitution.'" *Kincer v. State,* 26 Wn. App. 2d 143, 149, 527 P.3d 837 (2023). We assume state law is not preempted by federal law unless Congress makes a clear indication to do so. *Waste Mgmt. of Wash., Inc. v. Wash. Utils. & Transp. Comm'n*, 24 Wn. App. 2d 338, 350, 519 P.3d 963 (2022).

We review de novo issues of federal preemption, and the party claiming preemption has the burden of proof. *Kincer*, 26 Wn. App. 2d at 149.

B.      *Smith-Gill Fails to Demonstrate Federal Preemption*

Smith-Gill argues that RCW 51.32.220 hinders the purpose and objective of 42 U.S.C. § 423(a). Specifically, Smith-Gill submits that § 423(a) allows individuals to engage in substantial gainful activity (SGA) while receiving SSDI; therefore, offsetting workers' compensation benefits frustrates that allowance. We disagree.

Here, Smith-Gill challenges only the third preemption basis, that state law hinders accomplishment of the purposes and objectives of 42 U.S.C. § 423(a). So we begin with the assumption that federal law does not preempt state law. And Congress makes no declaration of intent to preempt state law in 42 U.S.C. § 423(a). But courts read statutes together with their related provisions. *Brown,* 4 Wn.3d at 586. Because § 424a(d) references § 423, we read § 423 in conjunction with § 424a, which creates the offset and allows for state enacted reverse offsets like RCW 52.32.220.

Washington courts have held that 42 U.S.C. § 424a does not preempt Washington's reverse offset statutes. *Harris*, 120 Wn.2d at 476. The *Harris* court reasoned that 42 U.S.C. § 424a(d) expressly permits states to enact reverse offset legislation, "thus indicating a Congressional interest in sharing the field of benefit coordination." *Harris,* 120 Wn.2d at 471. Washington's reverse offset statutes do precisely what 42 U.S.C. § 424a(d) contemplates. *Frazier*, 101 Wn. App. at 418. Rather than frustrating the purpose or objective of 42 U.S.C. § 423(a) and 424a, RCW 51.32.220 operates in conjunction with it. *Frazier*, 101 Wn. App. at 416. Congress expressly provided states with the ability to enact reverse offset legislation. *Harris*, 120 Wn.2d at 467.

*Harris* does not specifically address Smith-Gill's apparent contention that SSDI and additional wages earned below the SGA are separate, such that an offset of workers' compensation benefits hinders the purpose of § 423 by reducing actual wages earned above the SSDI amount. But Smith-Gill misses that SSDI benefits and workers' compensation total disability benefits are wage replacement benefits. *Harris*, 120 Wash. 2d at 480.

Congress has demonstrated clear evidence intending to coordinate disability benefits to avoid duplication of benefits through enacting 42 U.S.C. § 424a. *Id.* at 471. Preventing duplicate wage replacement benefits is a federal policy decision with which RCW 51.32.220 aligns. *Frazier*, 101 Wn. App. at 416; *Harris*, 120 Wn.2d at 471. Smith-Gill cannot demonstrate that compliance with both 42 U.S.C. § 424a and RCW 51.32.220 conflicts with federal law nor that the statute stands as an obstacle to the accomplishment of federal objectives given that Congress has expressly permitted state reverse offset legislation. Smith-Gill's dispute is with the state legislature or Congress.[3]

Accordingly, we hold that Smith-Gill fails to show that § 423(a) preempts RCW 51.32.220 or prevents DLI from offsetting Smith-Gill's time-loss compensation based on her receipt of SSDI benefits.

## IV. ATTORNEY FEES AND COSTS ON APPEAL

Smith-Gill requests attorney fees and costs on appeal under RCW 51.52.130.

Under RAP 18.1(a), we may award attorney fees and costs "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review" before our court.

---

[3] Whether a federal statute conflicts with another federal statute is not a question of preemption, but rather a question of repeal or abrogation. *Inlandboatmen's Union of the Pac. v. Dep't of Transp.*, 119 Wash. 2d 697, 704, 836 P.2d 823, 828 (1992) ("the power of one federal law to exclude the application of another federal law does not control the issue of concurrent jurisdiction between the federal government and the states"); *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1153 (9th Cir. 2020) ("The usual terms employed in analyzing a conflict between federal laws are repeal and abrogation."). Further, when two federal laws appear to conflict, the court attempts to harmonize them, giving effect to both laws unless there is an "irreconciled conflict." *Id.* at 1156. 42 U.S.C §§ 423(a) and 424a reveal no such conflict and Smith-Gill does not raise an issue of repeal or abrogation.

No. 60535-0-II

Under RCW 51.52.130, attorney fees and costs are owed to the party appealing a Board decision if, on appeal, the Board's order is reversed or modified, and additional relief is granted to the worker. Because Smith-Gill does not prevail, she is not entitled to fees and costs on appeal.

CONCLUSION

We hold RCW 51.32.225 does not apply, but RCW 51.32.220 does apply, and Smith-Gill fails to show that federal law preempts application of the offset. Accordingly, we affirm and decline to award Smith-Gill attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.

15